UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINASHE JOSPHATE
MUZAMHINDO,

       Plaintiff,

v.

NOAH NAGY, et al.,

       Defendants.
                             /

Case No. 2:20-cv-12529

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANTS' PARTIAL MOTION TO DISMISS [4]**

Plaintiff Tinashe Josphate Muzamhindo sued Defendants, who worked at the G. Robert Cotton Correctional Facility while Plaintiff was incarcerated there. ECF 1. Specifically, Plaintiff sued Defendants for violating his Eighth Amendment right to be free from cruel and unusual punishment pursuant to 42 U.S.C. § 1983. *Id.* at 2. Two Defendants, Warden Noah C. Nagy and Deputy Warden Russell F. Rurka, moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). ECF 4. After the motion was briefed, ECF 7, the Court carefully reviewed the papers, and finds that a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the reasons below, the Court will grant the partial motion to dismiss.

**BACKGROUND**

Plaintiff was incarcerated at the G. Robert Cotton Correctional Facility from about February 2019 until his release on June 30, 2020. ECF 1, PgID 6. In May 2020, Plaintiff was approached in one of the prison's bathrooms by a group of inmates who

1

told him to pay them "rent." *Id.* Plaintiff understood this interaction to mean that he would be assaulted if he did not comply with the demand for payment. *Id.* When Plaintiff did not comply with the demand, five inmates punched and kicked him repeatedly. *Id.* The attackers did not use any weapons but allegedly told Plaintiff they would kill him if he reported the incident. *Id.* at 7. After the attack, Plaintiff returned to his cube and one of the attackers allegedly told him that after the count,[1] he had to "go," which Plaintiff understood to mean his belongings would be stolen. *Id.*

That same day, after the count, two of the inmates entered Plaintiff's cube and physically assaulted him. *Id.* After "several minutes" Defendant Schulte, a correctional officer, arrived at the cube and instructed the alleged assailants to leave. *Id.* Plaintiff alleges Defendant Schulte witnessed Plaintiff's shirt torn off, heavy breathing, and blood on his face. *Id.* at 8. But Plaintiff alleges Defendant Schulte took no action and left him alone in his cell where he was attacked again fifteen minutes later. *Id.* Plaintiff alleges Defendant Schulte "failed to take any action to ensure Plaintiff's safety." *Id.*

During the second attack in the cube, Plaintiff alleges he was stabbed about seventeen times and then went to drink some water several minutes later. *Id.* While at the water fountain, Plaintiff was allegedly stabbed again in the forehead. *Id.* at 9. Plaintiff alleges Defendant Schulte witnessed the attack and "broke-up the altercation." *Id.* Plaintiff was taken to the hospital and treated for his injuries. *Id.*

---

[1] At various times during a day, prison facilities count the number of inmates at the facility to make sure no one is missing or escaped.

2

After a three-day stay, he was released from the hospital and placed in segregation at the facility for another week. *Id.*

While Plaintiff was in segregation, Defendant Rurka allegedly talked to Plaintiff about the attack and checked on his condition. *Id.* at 9. Plaintiff alleges that Defendant Rurka asked if he was "alright after the attack" and that Plaintiff responded he was not. *Id.* Plaintiff also alleges Defendant Rurka took no further action. *Id.* at 10.

Later, in May 2020, Plaintiff participated in a misconduct hearing during which MDOC officials reviewed video evidence of his assault. *Id.* After the hearing, Plaintiff met with someone in the facility's Security Classification Committee to determine whether he would receive protective custody or be placed back in the prison population. *Id.* The Committee member placed Plaintiff back in Level II of the general population. *Id.* at 11. Plaintiff alleges that a Special Problem Offender Notice ("SPON") was not given after the attacks, he was not provided protective custody, and was removed from segregation. *Id.*

After the incidents, Plaintiff was moved several times within the prison. *Id.* at 12–14. But in June 2020, Plaintiff allegedly was placed in the same unit as at least one of his previous attackers. *Id.* at 15. Plaintiff alleged he made his girlfriend aware, and she began calling the facility to warn "that an attack was imminent." *Id.* Plaintiff also alleged the prison did nothing with the information and, within twenty minutes of the placement, six inmates assaulted and stabbed him approximately twelve times in his cell. *Id.* The facility staff eventually broke up the altercation. Plaintiff was then

taken the hospital and placed in protective custody upon return. *Id.* at 16. Plaintiff was released from custody a few weeks later on parole. *Id.*

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

Defendants Nagy and Rurka argue that because Plaintiff has failed to plead sufficient facts to show their personal involvement in any alleged unconstitutional conduct, the claims against them must be dismissed. ECF 4, PgID 43. In response, Plaintiff argues that because Defendants Nagy and Rurka are mentioned in Paragraphs 50, 51, 53, 66, and 90 of the complaint, in which all Defendants are listed, the complaint is sufficiently specific. ECF 7, PgID 85, 88.

4

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 685 (6th Cir. 2008) (emphasis in original) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 842 (6th Cir. 2002)). Because of that, the Court must "analyze separately whether [Plaintiff] has stated a plausible constitutional violation by each individual defendant, and [] cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) (citations omitted). The Court will therefore analyze the complaints against Defendants Nagy and Rurka separately.

I. <u>Defendant Nagy</u>

Defendant Nagy's name only appears in the complaint twice. First, paragraph 11 explains that he was the warden and is being sued in his individual capacity. ECF 1, PgID 4. And second, in a list of names set forth in paragraph 90, the complaint alleged broadly that all the named individuals acted with deliberate indifference when they placed the "ringleader" of the attacks a few doors down from Plaintiff's cell. *Id.* at 19. But at no point does the complaint allege that Defendant Nagy knew about the attack, had decision-making authority over the placement of inmates in cells within the facility, or specifically violated the Eighth Amendment. Merely listing Defendant Nagy's name was insufficient to allege with particularity actions sufficient to constitute a constitutional violation.

5

In his response to the motion to dismiss, Plaintiff argued that Defendant Nagy was also implicated in paragraphs 50, 51, 53, and 66 of the complaint. ECF 7, PgID 85–87. But having looked closely at each of those paragraphs, the Court is unconvinced that any of the four paragraphs allege with particularity actions taken or omitted by Defendant Nagy. Instead, the paragraphs allege actions or omissions that Plaintiff believes *should* have been taken by someone at the incarceration facility, but they do not pinpoint a specific person tasked with the acts. There are no facts alleged to suggest Defendant Nagy could issue or deny a SPON order (¶¶50, 51, 66) or to offer or deny Plaintiff protective custody (¶53). Instead, the complaint overall suggests those decisions were made by other staff members. Thus, Defendant Nagy could only reasonably be implicated in the present case under a theory of respondeat superior, as the warden of the facility. But it is settled law that such a theory is inapplicable to § 1983 cases. *See Frontera v. City of Columbus*, 619 F. Supp. 2d 493, 501 (S.D. Ohio 2008), *aff'd sub nom. Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191 (6th Cir. 2010) ("The doctrine of *respondeat superior* does not apply; a governmental entity cannot be held liable under § 1983 based solely upon allegations that an employee or agent inflicted an injury.").

Because the complaint fails to allege any with particularity facts that assert the violation of a constitutional right by Defendant Nagy, the motion to dismiss Defendant Nagy from the present case must be granted.

II. <u>Defendant Rurka</u>

The complaint named Defendant Rurka several more times than Defendant Nagy, but the additional allegations did not specifically implicate any action from Defendant Rurka that could constitute any constitutional violations. First, the complaint mentioned Defendant Rurka in paragraph 12 as a deputy warden at G. Robert Cotton Correctional Facility and the complaint asserted he was being sued in his individual capacity. ECF 1, PgID 4. The complaint also mentioned Defendant Rurka in paragraphs 40–42 and described how Defendant Rurka visited Plaintiff while he was recovering in segregation after the first alleged attack. *Id.* at 9–10. Specifically, the complaint stated that Defendant Rurka allegedly visited Plaintiff, asked if he was doing alright, and when Plaintiff allegedly responded "no," Rurka "took no further action." *Id.* Those references in the complaint do not outline a constitutional violation and instead state merely that Defendant Rurka visited Plaintiff and inquired into his condition. Although in some circumstances *omissions* by government officials may be constitutional violations, the complaint here does not include particular facts to allege that when Defendant Rurka "took no further action" he committed a constitutional violation. And finally, the complaint also named Defendant Rurka in paragraph 65, and stated that a different staff member at the facility emailed Defendant Rurka with "notice of the threat" that another inmate posed to Plaintiff. *Id.* at 13. But there are no facts in the paragraph that alleged the

7

email notice created a situation in which Defendant Rurka violated Plaintiff's constitutional rights.

Last, Plaintiff offered the same series of paragraphs as those alleged against Defendant Nagy to implicate Defendant Rurka in a generalized list of wrongdoing. *See* ECF 7, PgID 87–90. But, for the same reasons that those paragraphs were too generalized to constitute a valid complaint against Defendant Nagy, the complaint also fails against Defendant Rurka. And likewise, a theory of respondeat superior cannot apply. *See Frontera*, 619 F. Supp. 2d at 501.

Because the compliant fails to allege with particularity any facts to assert the violation of a constitutional right as to Defendant Rurka, the motion to dismiss Defendant Rurka from the case must be granted.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's partial motion to dismiss [4] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Nagy and Rurka are **DISMISSED** from this case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: May 5, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 5, 2021, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager